CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 2 9 2012

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA**
ROANOKE DIVISION

| | | |
|---|---|---|
| **DANIEL PARKER** | ) | |
| for **DIANA M. PARKER,** deceased | ) | **Case No. 7:11-cv-280** |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OPINION** |
| v. | ) | |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | **By: James C. Turk** |
| Commissioner of Social Security, | ) | **Senior United States District Judge** |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Daniel Parker ("Plaintiff" or "Mr. Parker") brought this action on behalf of his deceased wife, Diana Parker ("Mrs. Parker") for review of Defendant Michael J. Astrue ("the Commissioner") 's final decision denying his claims for disability insurance benefits under Title II of the Social Security Act (the "Act"). The parties filed cross-motions for summary judgment (ECF Nos. 10, 14). A hearing was held on February 7, 2012, and the matters are now ripe for disposition. For the reasons set forth below, the Court finds that there is substantial evidence supporting the Commissioner's decision. Accordingly, the Commissioner's Motion for Summary Judgment (ECF No. 14) is **GRANTED** and the Plaintiff's Motion for Summary Judgment (ECF No. 10) is **DENIED**.

## I.  Procedural History

This case has amassed an unusually long procedural history. Mrs. Parker protectively applied for Disability Insurance Benefits ("DIB") in April 2003, alleging disability as of July 22,

1993, after she was involved in a motor vehicle accident. She was insured for benefits until September 30, 1994. Accordingly, while it is undisputed that Mrs. Parker's condition had taken a turn for the worse by 1997, the Plaintiff only seeks benefits for the limited period between July 22, 1993 until September 30, 1994. After an initial hearing on June 10, 2004, an Administrative Law Judge of the Social Security Administration ("ALJ") issued a Notice of Decision—Unfavorable on August 3, 2004, denying Mrs. Parker's claim for disability benefits.

On March 25, 2006, the Social Security Administration Appeals Council remanded the case to the ALJ because the ALJ had failed to adequately address the claimant's alleged mental impairments in his decision. After a supplemental administrative hearing was held on August 21, 2006, the ALJ issued a Notice of Decision on November 22, 2006, finding Mrs. Parker not disabled. The Appeals Council denied Mrs. Parker's request to review the ALJ's decision, and Plaintiff appealed the ALJ's decision to this Court. On December 11, 2008, the Court granted the Commissioner's Motion to Remand. On September 27, 2009, the Appeals Council remanded the case to a different ALJ because the original ALJ's financial analysis of Mrs. Parker's work activity after the alleged disability onset date was insufficient to permit a finding that the work met the monetary criteria to be considered "substantial gainful activity."

Mrs. Parker died on February 27, 2009, and her husband, Daniel Parker, was substituted as a party in the case. On November 8, 2010, the ALJ issued a decision finding Mrs. Parker not disabled. The Appeals Council declined to assume jurisdiction of the case, making the ALJ's decision final. Mr. Parker timely filed suit in this Court.

## II. **Medical History**

Mrs. Parker was 45 years old when she filed for disability insurance benefits in 2003, making her a person of younger age under the regulations. R. 1383. *See* 20 C.F.R. § 404.1563(c). Mrs. Parker was first diagnosed with Type I (juvenile) diabetes in 1977. Her medical records reflect a history of complications related to her diabetes from the 1980s and early 1990s. These problems include chronic fatigue/malaise/insomnia, painful lesions on the feet/severe hyperkeratosis, neuropathy, depression and anxiety, and weight loss. According to Mrs. Parker's medical providers, many of these problems could have been ameliorated by able management of her diabetes.

Mrs. Parker attended high school until twelfth grade, but did not graduate. She later became certified as a nurse's aide. At some point, including from 1993 to 1994, she cared for three elderly women who had Alzheimer's disease in her home. Her main role in their care was to provide companionship, while others did tasks such as cooking and cleaning. From August until December of 1998, Mrs. Parker worked full-time in the dining hall/kitchen of Radford University, performing tasks such as cooking meals and cleaning dishes.

Mrs. Parker claims DIB from July 22, 1993. That day, she went to the podiatrist complaining of a painful lesion on the bottom of her second toe of her right foot. R. 644. The podiatrist observed no signs of infection or ulceration and he debrided the lesion without complication. R. 644. In October of 1993, Mrs. Parker sought treatment from her podiatrist for a painful lesion on the same toe. R. 643. The podiatrist debrided the lesion, revealing a secondary superficial ulceration and advised Mrs. Parker about wound care and appropriate shoe gear. R. 643.

On January 13, 1994, Mrs. Parker saw neurologist Dr. Rollin Hawley, complaining of neck pain. R. 1343. Mrs. Parker told Dr. Hawley that she had lost weight since the accident and

had stopped taking her insulin for one year. R. 1280, 1343. Dr. Hawley noted that Mrs. Parker had a reactive depression due to the automobile accident. She also had tenderness of her left lower cervical roots, producing pain up into the left side of her face. Mrs. Parker's left shoulder was stiff with mild limitation of motion. She had no deep tendon reflexes due to a mild diabetic peripheral neuropathy. Dr. Hawley noted this would be helped by good control of Mrs. Parker's blood sugar. She also had decreased pinprick sensation over her left triceps muscle. Otherwise, her complete neurologic examination was normal. R. 1344.

In the spring of 1993, Mrs. Parker reported that she had a recent eye exam that did not reveal any problems. R. 1344. Dr. Hawley's review of Mrs. Parker's July 1993 x-rays notes some cervical hypolordosis. R. 1344. Her nerve conduction studies showed a mild diabetic distal axonal peripheral neuropathy. R. 1345. Dr. Hawley concluded that Mrs. Parker had a left C6-7 painful sensory post-traumatic radiculopathy caused by the motor vehicle accident and a mild and asymptomatic underlying symmetric diabetic sensory axonal distal peripheral neuropathy. R. 1345. On January 25, 1994, Mrs. Parker's x-rays and MRI of her cervical spine showed mild narrowing of the left neural foramina and no evidence of disc herniation or other significant abnormality. R. 1278.

## III.   Standard of Review

In applying for disability benefits, a claimant bears the burden of proving that she is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(2)(A). A claimant must satisfy the

Commissioner that her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do her previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 423(d)(2)(A).

In assessing DIB claims, the Commissioner applies a five-step sequential inquiry. The Commissioner considers whether a claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to her past relevant work; and (5) if not, whether she could perform other work present in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id. Accord Fiske v. Astrue*, No. 11-1335, 2012 WL 29182, at *2 (4th Cir. Jan. 6, 2012). The fourth and fifth steps of the inquiry require an assessment of the claimant's Residual Functional Capacity ("RFC"), which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *McLain v. Schweiker*, 715 F.2d 866, 869 (4th Cir. 1983).

This Court's review is limited to determining whether there is substantial evidence in the record to support the Commissioner's findings of fact and whether the correct law was applied. 42 U.S.C. § 405(g). Accordingly, a reviewing court may not substitute its judgment for that of the Commissioner, but instead must defer to the Commissioner's determinations if they are supported by substantial evidence. *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood,* 487 U.S. 552, 565 (1988), but is "more than a mere scintilla of evidence [though] somewhat less than a preponderance," *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). In other words,

substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971).

## IV. <u>Discussion</u>

Taking into account medical records, expert testimony, and the testimony of Mrs. Parker's family and friends, the ALJ found that Mrs. Parker had "slight" restrictions in performing daily living activities, maintaining social functioning, and sustaining "concentration, persistence, or pace." R. 1511. The ALJ further found that any mental functional limitation was non-severe, and that the record did not reflect any repeated episodes of deterioration or decompensation in work or work-like settings. R. 1511–12. Nonetheless, because the ALJ found that Mrs. Parker had "severe physical impairments" during the relevant time period, the ALJ continued her evaluation to determine whether she could have performed any of her past relevant work or any other work existing in significant numbers in the national economy. R. 1512. While the ALJ determined that Mrs. Parker's RFC from July 22, 1993 to September 30, 1994, would have precluded her from performing her past relevant work, she determined that Mrs. Parker could perform light work. R. 1515. Accordingly, the ALJ concluded Mrs. Parker was not disabled from July 1993 to September 1994.

Mr. Parker argues the ALJ made two significant errors which warrant summary judgment in his favor. First, he claims, the ALJ erred by discounting the testimony of the treating physician and relying on the testimony of a medical expert, resulting in an incorrect established onset date of disability. Second, he contends that Mrs. Parker did not have the RFC to perform the work identified by the ALJ. The Court addresses each of these objections in turn.

### A. The ALJ Applied the Correct Law in Inferring Mrs. Parker's Onset Date of Disability

Plaintiff argues that the ALJ's decision that Mrs. Parker was not disabled was the result of her misplaced reliance on the testimony of medical experts and that the ALJ instead should have inferred the onset date from the testimony of Dr. Hawley and Mrs. Parker's family and friends. Plaintiff's argument is incorrect as a matter of law. In determining the onset date of disability, many factors are evaluated together including the individual's allegation, the work history, and the medical evidence. SSR 83-20, Titles II and XVI: Onset of Disability, 1983 WL 31249.

In determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available. SSR 83-20 states that the ALJ should first look to the file before inferences are made. If reasonable inferences cannot be made from the evidence in the file, then it may be necessary to explore other sources of documentation. *Id.* When the medical or work evidence is not consistent with the allegation, additional development may be needed to reconcile the discrepancy. Because this case involves slowly progressive impairments, there is no precise onset date recorded in the medical records. Therefore, it was necessary for the ALJ to infer the onset date of disability from the medical and other evidence that describes the history and symptomology of the disease process. *Id.* To make these inferences, SSR 83-20 requires the ALJ to first call on the services of a medical advisor. Finally, the onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record. *Id.*

The ALJ followed these requirements and called on the services of medical experts Dr. Ward W. Stevens ("Dr. Stevens") and Dr. Charles H. Holland ("Dr. Holland") to assist her in inferring the onset date of Mrs. Parker's disability. The ALJ's conclusion relied in part on Dr. Holland's testimony that based on the evidence he could not determine that Mrs. Parker had a

"severe" mental impairment during the relevant time period. R. 1586. Additionally, Dr. Stevens opined that Mrs. Parker was certainly disabled by 1997. R. 1593. But he also testified that after reviewing the evidence, from July of 1993 through September of 1994, Mrs. Parker's health was on the verge of deterioration due to her diabetes, but she was still in a functional state and not disabled. R. 1598–99. Dr. Stevens concluded that Mrs. Parker's automobile accident in 1993 did not cause her to experience a severe amount of pain or functional limitations. R. 1596. Dr. Stevens' testimony is consistent with Dr. Hawley's medical reports at the time that Mrs. Parker's neurologic examination was normal other than some tenderness over her cervical spine, a stiff shoulder, and the absence of deep tendon reflexes as well as the MRI and x-rays from January of 1994 that showed only mild narrowing of the left neural foraminal with no evidence of disc herniation or other significant abnormality. R. 1344. Therefore, Dr. Stevens' and Dr. Holland's testimony was consistent with the record as a whole. *See* 20 C.F.R. §404.1527(d)(4) (As a general matter, Commissioner will give more weight to medical opinions that are consistent with the record as a whole).

The ALJ also considered the testimony of Mrs. Parker's family and friends. Mr. Parker's testimony corroborated the testimony of Dr. Stevens that Plaintiff was capable of performing at least a limited range of light work during the time period in question. Mr. Parker's testimony about his wife's care of the three elderly women in her home, her enthusiasm in getting married, her participation in vacations including their honeymoon and camping, and other social activities, supports the finding that Mrs. Parker was not disabled at the time of her date last insured. It is true that the testimony of Mrs. Parker and her friends was not entirely consistent with the ALJ's finding. For example, Edith Hughes testified that she knew Mrs. Parker in 1995, and as of that date, Mrs. Parker was unable to stand for more than a short time and repeatedly

8

needed to lie down. R. 1513. This testimony could arguably support the Plaintiff's contention

that Mrs. Parker was disabled during the relevant time period. But it is not this Court's role to

"reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for

that of the agency." *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (quoting *Mastro v.*

*Apfel*, 270 F.3d 171, 176 (4th Cir. 2001)) (internal quotation marks omitted). The Court finds

that the ALJ correctly complied with SSR 83-20 in inferring the onset date of Mrs. Parker's

disability.

### B. There is Substantial Evidence to Support the ALJ's Decision to Give Little Weight to Dr. Hawley's Opinion

Mr. Parker argues that the ALJ erred in not giving controlling weight to Dr. Hawley's

2004 letter summarizing Parker's medical records from 1993-1994. After reviewing the record,

the Court finds that the ALJ's decision not to give controlling weight to Dr. Hawley's 2004

correspondence was supported by substantial evidence.

Mr. Parker contends that the ALJ erred in discounting the opinion of Mrs. Parker's

treating physician, Dr. Hawley, and instead relying too heavily on the opinion of the consulting

expert, Dr. Stevens. Mr. Parker takes special exception to the following text of the ALJ's

opinion:

> The undersigned must consider the possible biases that a treating physician may bring to
> a disability evaluation. The patient's regular physician may want to do a favor for a friend
> and client, and so the treating physician may too quickly find disability. Additionally, the
> claimant's regular physician may not appreciate how the patient's case compares to other
> similar cases.

R. 1508. Mr. Parker argues that this statement is representative of the ALJ's error in discounting

Dr. Hawley's opinion. In support of this argument, he relies upon *Hall v. Astrue*, No. 7:07-cv-

00590, 2008 WL 5455720 (W.D. Va. Dec. 31, 2008), where a Magistrate Judge in this District

derided similar language. Here, like in *Hall,* "there is not a shred of evidence . . . to suggest bias

9

. . . and any such suggestion is completely unfounded." *Id.* at *4. The ALJ's unsupported speculation that Dr. Hawley, a learned professional, was biased may not have been the best choice of words, as it appears to cast aspersions on Dr. Hawley's judgment and character that cannot be supported by the record. However, in *Hall*, the Magistrate Judge found that the ALJ had discounted the treating physician's testimony *solely* on the basis of the physician's "potential biases." *Id.* Here, despite her unfortunate statement, there is ample evidence in the record to support the ALJ's decision to give limited weight to Dr. Hawley's opinion.

Mr. Parker is correct that the opinion of a treating physician is ordinarily entitled to more weight than that of a non-treating physician. 20 C.F.R. § 404.1527(d)(2). Additionally, where the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," it will be given controlling weight. *Id.* The ALJ's evaluation of medical opinions must take into account, *inter alia*, whether they are well-supported and how consistent they are with the other evidence in the record. *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006). If an opinion is not supported by the medical evidence or is otherwise inconsistent with the record, it may be given "significantly less weight." *Craig v. Charter*, 76 F.3d 585, 590 (4th Cir. 1996). *See also Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam) (An "ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence"). Here, the ALJ properly declined to give controlling weight to Dr. Hawley's 2004 letter because it is not supported by other evidence in the record. Where, as here, the ALJ determines that the treating physician's opinion is not to be accorded controlling weight, she must look to the following to determine how much weight to accord it: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the

10

treatment relationship; (3) the extent to which the treating physician's opinion is supported by

objective medical evidence; (4) the extent to which the treating physician's opinion is consistent

with the other evidence in the record; (5) the physician's specialty; and (6) other factors such as

the treating physician's familiarity with other information in the claimant's case record and the

treating physician's understanding of Social Security disability programs and their evidentiary

requirements. *Id.* § 404.1527(d); *Accord Winford v. Chater*, 917 F.Supp. 398, 401 (E.D. Va.

1996).

Dr. Hawley's 2004 opinion stated that when he saw Mrs. Parker on January 13, 1994,

"she was totally and permanently disabled for any gainful employment . . . . particularly because

of her *severe depression*." R. 1275 (emphasis added).  As an initial matter, the ALJ properly

declined to rely on Dr. Hawley's 2004 *legal* conclusion—whether or not a claimant is disabled

within the meaning of the Act is a determination reserved to the Commissioner.  20 C.F.R. §

404.1527(e).

Second, Dr. Hawley's 2004 opinion, written more than a decade after his clinical

evaluation of Mrs. Parker, appears inconsistent with his own medical findings made on the date

of her evaluation in 1994.  While in his 2004 letter, he attributed part of Mrs. Parker's disability

to a painful Left C6-7 Sensory Post Traumatic Radiculopathy, in 1994, Dr. Hawley concluded

that this radiculopathy was only "mild."  In a January 1994 letter to Mrs. Parker, Dr. Hawley

wrote: "I agree with Dr. Lee that you are suffering from a reactive depression due to your

automobile accident.  I think that it has caused your weight loss, loss of appetite for food and

sex, and constriction of your normal interests." R. 1344.[1]  To be sure, depression is a serious

---

[1] "Reactive depression is generally a transient condition precipitated by a stressful life event or other environmental factor." *Wall v. Astrue*, 561 F.3d 1048, 1054 n.4 (10th Cir. 2009) (citation omitted).

11

medical concern.  But the ALJ could have properly concluded that Dr. Hawley's 2004

conclusion of "severe depression" is inconsistent with the other evidence in the record, especially

since Dr. Hawley did not term the depression "severe" in his 1994 report and there is no other

evidence to support such a finding.

Moreover, the ALJ did take Mrs. Parker's depression into account in her decision.  In

fact, the ALJ found "that the claimant had medically determined mental impairments during the

period of July 1993 through her date last insured, which corresponded to sections 12.04

(affective disorders) and 12.06 (anxiety related disorders) of the Listing of Impairments in effect

at that time." R. 1508 (emphasis omitted).  Additionally, the ALJ, albeit reluctantly, found that

Mrs. Parker had provided sufficient medical documentation to indicate the persistence of a

depressive syndrome under both Section 12.04 and Section 12.06.  The issue in dispute is

whether that depression rendered Mrs. Parker disabled within the meaning of the Act.

A depressive affective disorder meets the requisite level of severity for disability where it

results in at least two of the following:

> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or
> 4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).

20 C.F.R. pt. 404, subpt. P, app. 1 § 12.04 (1993).  A depressive anxiety-related disorder,

meanwhile, constitutes a disability if it meets one of the affective disorder requirements or

results "in complete inability to function independently outside the area of one's home." *Id.* §

12.06.

In determining the severity of Mrs. Parker's mental ailments during the time period in question, the ALJ evaluated all the evidence before her, including Dr. Hawley's notes, Mrs. Parker's own responses to the Social Security disability questionnaire, the extent of her social activities during and after the relevant time period, and the extent of her occupational abilities. Moreover, although the ALJ acknowledged that there was some evidence in the record of Mrs. Parker's sleep problems, fatigue, and weight loss during the relevant time period, the ALJ found no clinical evidence that these problems were caused by a mental illness. R. 1511. As the ALJ correctly recognized, "[t]he issue is not whether the claimant had pain and symptoms during the period under adjudication, but whether her pain and functional limitations were so severe as to be disabling." R. 1513.

Mrs. Parker's podiatrist noted that prior to September 20, 1994, her complaints were relatively minor. R. 1274. On January 13, 1994, Dr. Hawley commented on her physical examination that Plaintiff had reactive depression from the accident. R. 1343–44. Dr. Hawley noted a lack of deep tendon reflexes, but concluded that this was the result of a "mild diabetic neuropathy" which could be treated by simply keeping control of Mrs. Parker's blood sugar. R. 1344. He did not appear overly concerned about Mrs. Parker's condition. The ALJ discounted Dr. Hawley's 2004 diagnosis that Mrs. Parker was disabled during the relevant time period "particularly because of her severe depression" because it was inconsistent with the other evidence in the record. R. 1508. The ALJ did not err by reasonably rejecting a treating source opinion submitted approximately ten years after the plaintiff's date last insured, where there was no objective medical evidence that impairments observed by the treating source existed prior to the date last insured. *See generally Johnson v. Barnhart*, 434 F.3d 650, 656–57 (4th Cir. 2005) ("Although Dr. Starr is not a treating physician, the ALJ properly awarded his opinion significant

weight because Dr. Starr thoroughly reviewed Johnson's medical records, the objective medical evidence supports Dr. Starr's conclusion, and his opinion is consistent with the other medical opinions").

Accordingly, the Court finds that there is substantial evidence to support the ALJ's finding that Mrs. Parker did not have a presumptive disability under Step Three of the evaluation process. The inquiry does not stop there, however, because the ALJ determined that Mrs. Parker had severe physical impairments during the relevant period that neither met nor equaled a listed impairment. Accordingly, the ALJ moved on to steps four and five of the evaluation. At Step Four, the ALJ determined that Mrs. Parker's RFC during the relevant time period would not have permitted her to perform any "past relevant work." The ALJ's inquiry then shifted to Step Five, where she sought to determine whether jobs existed in significant numbers in the national economy during the relevant period which Mrs. Parker could have performed in light of her RFC, age, education, and experience.[2]

### C. Substantial Evidence Supports the ALJ's RFC Determination and Conclusion that Mrs. Parker Was Not Disabled

The ALJ considered the evidence as a whole and found that during the period from July 22, 1993 through September 30, 1994, Mrs. Parker retained the RFC to lift and/or carry up to 20 pounds occasionally and 10 pounds frequently. The vocational expert characterized Plaintiff's past work as a Certified Nursing Assistant as a semi-skilled medium exertional job; as a cashier as a semi-skilled, light work and convenience store supervisor as a skilled, light work; her work in the University kitchen as unskilled, medium work similar to semi-skilled, light exertional work. R. 1515. Giving Mrs. Parker the benefit of the doubt, the ALJ concluded that her RFC

---

[2] At step five of the sequential evaluation, the burden of showing that there were jobs in the national economy that the claimant could have reasonably performed shifts to the Commissioner.

14

during the period of July 22, 1993 to September 30, 1994, would have precluded her from performing her past relevant work.  However, the ALJ found that that there was a significant number of jobs in the national economy that Mrs. Parker could have performed, taking into account her medically determinable impairments, functional limitations, age, education, and work experience.

Plaintiff argues that the ALJ had no basis for finding that Mrs. Parker could perform other work at the "light" exertional level if all of her limitations were considered.  The final responsibility for determining a claimant's RFC is specifically reserved to the Commissioner.  20 C.F.R. §§ 404.1527(e); 416.927(e).  *See also Colvard v. Charter*, No. 94-1457, 1995 WL 371620 (4th Cir. Jun. 21, 1995) ("The determination of a claimant's residual functioning capacity lies with the ALJ, not a physician, and is based upon all relevant evidence.").  In determining Mrs. Parker's RFC, the ALJ applied the five-step sequential evaluation process described above.  Although the ALJ did not find Dr. Hawley's conclusion that Mrs. Parker was completely disabled during the relevant time period to be supported by medical evidence, the ALJ did find that Mrs. Parker had mental impairments during the period of July 1993 through her date last insured, including depression and anxiety, and determined that Plaintiff met the requirements for presumptive disability under section 12.04 paragraph A and 12.06. R. 1508–10.  The ALJ assessed the functional severity of Mrs. Parker's mental impairments and concluded that her mental condition resulted in only "slight" restriction in her ability to perform daily living activities.  With respect to social functioning, the ALJ considered the testimony describing Plaintiff's honeymoon and vacationing, continuing to care for the elderly women, and working in a university cafeteria, and determined that the plaintiff's mental condition resulted in only "slight" restriction in her ability to maintain social functioning.  Additionally, the ALJ

15

determined that the plaintiff's mental condition resulted in only "slight" restriction in her

concentration, persistence, and pace.  Based on the evidence about Mrs. Parker's personal

activities and employment activities, the ALJ determined that the record does not reflect

deterioration or decompensation in work or work-like settings.   This level of functional

limitation designates a mental impairment that is non-severe.  20 C.F.R. § 404.1520(a).

 Mr. Parker next argues that the ALJ had no basis for determining that Mrs. Parker could

perform a significant number of jobs in the national economy prior to her date last insured.  The

thrust of the Plaintiff's objection is that the ALJ erred in not taking into account all of Mrs.

Parker's ailments in combination with one another.  The Plaintiff's brief correctly points out that

the ALJ determined that Mrs. Parker suffered a number of medically determinable physical

impairments during the period in question, including

> diabetes mellitus, non-compliant, mild diabetic neuropathy, cervical strain, mild cervical
> arthritis, possible diabetes related nerve root disease in her neck, tension headaches,
> insomnia, hypertension, tobacco abuse, and lesion on the bottom of the second toe, right
> foot. These impairments in combination had more than a minimal effect on the claimant's
> functioning and she therefore had a "severe" physical impairment.

R. 1505.  But a finding of a "severe physical impairment" is not a *per se* determination that a

claimant is unable to work.  Rather, the ALJ must evaluate the physical ailments under steps four

and five of the sequential evaluation discussed above to determine the extent of the claimant's

residual functional capacity, if any.  That is what happened here. *See* R. 1514–16.  Dr. Stevens

testified that Mrs. Parker would have suffered fatigue, thirst, and possibly frequent urination

during the time period in question.  R. 1599–1600.  Nonetheless, Dr. Stevens thought Mrs.

Parker would be fine "in a light job with the ability to move around some."  R. 1600.

 Mr. Parker also argues that the ALJ did not pose an appropriate hypothetical question to

the Vocational Expert ("VE").  Namely, he claims that the ALJ did not ask the VE to take into

account Mrs. Parker's fatigue, pain, need to elevate her legs, and inability to stand for a prolonged period of time. "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). In an effort to determine the extent of Mrs. Parker's RFC, the ALJ proposed a hypothetical to the VE and asked her to give an expert opinion as to Mrs. Parker's ability to do a job requiring light exertion and one that was sedentary:

> Let's assume for hypothetical number one . . . . due to diabetes and other issues, she would have had some additional limitations. She did have some foot problems occasionally, during this time period, '93 to '94, so let's assume she should not climb ladders, due to foot problems. She should not work at heights. She should not operate foot pedals or foot controls with her feet. Due to foot problems, she should probably not have a job driving as her principal occupation . . . . Let's further assume that she'd probably be best working at an indoor and temperature controlled environment, and work should not exacerbate diabetes fluctuations. Let's assume that this individual could occasionally crouch, crawl, and stoop . . . . She would need to be in a work environment that's close to the bathroom, so she'd have good access to a bathroom, and she might need to change postures briefly, and in place – [Dr. Stevens] described it [as] sort of moving around a little bit, and I'll call it changing postures briefly and in place without leaving the work setting, workplace.

R. 1610–11. This detailed and specific inquiry appears to have taken into account the medical evidence that the ALJ found credible and substantiated. The VE responded that someone in that situation could be a cashier, a companion, a receptionist/information clerk, or a general office clerk. All of those jobs were generally available in the U.S. economy. Upon cross-examination by Mr. Parker's counsel, the VE admitted that a frequent need for bathroom breaks, *i.e.* 20 to 30 minutes a day other than breaks, would exclude the cashier job. Additionally, counsel asked whether fatigue, insomnia, propping one's feet up, or needing to lie down for extended periods would exclude any of the aforementioned occupations. The VE admitted that a companion could not be more limited than the person she was looking after, R. 1616, and that no job would tolerate a person's needing to lie down during the day outside of break times or being absent

more than two days a month.  R. 1617.  It is clear, then, that the VE's assessment *did* take Mrs. Parker's subjective complaints into account in combination with the objective medical evidence. The ALJ's thoughtful, considered inquiries to the VE, along with other evidence in the record, convince the Court that there is substantial evidence to support the ALJ's finding that Mrs. Parker had the RFC to perform light or sedentary work during the relevant time period.


## V.  Conclusion

Where, as here, "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the Court must defer to the Commissioner's sound judgment.  *Johnson*, 434 F.3d at 653.  The ALJ applied the correct legal standards and there is substantial evidence to support her factual findings.  For the aforementioned reasons, the Commissioner's Motion for Summary Judgment is **GRANTED** and Mr. Parker's Motion for Summary Judgment is **DENIED**.  An appropriate Order shall issue this day.


ENTER: This 29th day of February, 2012.

Senior United States District Judge